[Civ. No. 22775.   Second Dist., Div. One.   Sept. 18, 1958.]

ARTHUR GLOBE, Respondent, v. COUNTY OF LOS
ANGELES et al., Appellants.

Harold W. Kennedy, County Counsel, William E. Lamoreaux, Assistant County Counsel, Fred R. Metheny and Ronald L. Schneider, Deputy County Counsel, for Appellants.

A. L. Wirin, Fred Okrand and William T. Pillsbury for Respondent.

LILLIE, J.—This is an appeal by the county of Los Angeles, the board of supervisors and the superintendent of charities from a judgment in a mandamus proceeding ordering them to grant petitioner Arthur Globe, a temporary county employee, a full hearing in respect to his discharge from county employment.

On March 28, 1955, Arthur Globe was employed on a "noneligible temporary" basis as a social worker in the Department of Charities. On May 1, 1955, he became a "temporary, eligible" employee in the same position continuing as such until May 2, 1956, the date of his discharge from county service. On April 20, 1956, petitioner, having been duly subpoenaed, appeared before a Subcommittee on Un-American Activities of the United States House of Representatives, and after having been sworn refused to answer certain questions relating to past and present knowing membership in the Communist Party, his familiarity with and membership in a certain "John Reid Club of the Communist Party," his acquaintance with the activities of any persons known to him to be members of that club and whether during his service in the armed forces he had been, or was then, a member of the Communist Party. Petitioner refused to answer such questions, basing his refusal on the First Amendment of the United States Constitution and on a claim of privilege against self-incrimination under the Fifth Amendment.

Shortly thereafter petitioner was summarily discharged from county employment, his conduct in refusing to answer such questions being deemed insubordination and a violation of section 1028.1 of the Government Code of the State of California. This section provides in part as follows:

"It shall be the duty of any public employee who may be subpoenaed or ordered by the governing body of the state or local agency by which such employee is employed, to appear before such governing body, or a committee or subcommittee thereof, or by a duly authorized committee of the Congress of the United States or of the Legislature of this State, or any subcommittee of any such committee, to appear before such committee or subcommittee, and to answer under oath a question or questions propounded by such governing body, committee or subcommittee, or a member or counsel there, relating to:

. . . . . . . . . . . . . . . .

"(d) Questions as to present knowing membership of such employee in the Communist Party or as to past knowing membership in the Communist Party at any time since September 10, 1948.

"Any employee who fails or refuses to appear or to answer under oath on any ground whatsoever any such questions so propounded shall be guilty of *insubordination* and guilty of *violating* this section and shall be suspended and dismissed from his employment *in the manner provided by law.*" (Emphasis added.)

Petitioner requested a hearing before the Los Angeles County Civil Service Commission concerning his discharge and appeared before it on May 29, 1956. The commission ruled that petitioner was a temporary employee and therefore, pursuant to sections 19.07 and 19.09 of the county civil service rules was not entitled to such a hearing as a matter of right.

Thereafter petitioner instituted the present mandamus proceeding seeking reinstatement as a county employee and reimbursement for loss of compensation. The trial court found that regardless of his temporary status he was entitled to a hearing before the commission to explain his reasons for refusing to answer the questions propounded and that appellants' refusal to give him a full hearing constituted a denial of due process. The trial court granted a peremptory writ of mandate directing that a hearing be granted on petitioner's discharge.

The issue before us is whether the county civil service commission is required to hold a hearing on the discharge of a temporary county employee for a violation of section 1028.1 of the Government Code.

Appellants contend that in petitioner's discharge from county employment without a hearing there was no arbitrary act or discrimination which denied him due process. With this position we agree.

Authority to prescribe regulations for the admission of persons into civil service and their discharge from employment has been vested by the Charter of the County of Los Angeles in the Civil Service Commission. The rules of the commission have the same force and effect as charter provisions as long as they are applied in the scope contemplated by the charter. (*Campbell* v. *City of Los Angeles,* 47 Cal.App.2d 310 [117 P.2d 901]; *Bruce* v. *Civil Service Board,* 6 Cal.App.2d 633 [45 P.2d 419].)

Section 34 of article IX of the Charter of the County of Los Angeles provides in pertinent part as follows:

"The Commission shall prescribe, amend and enforce rules for the classified service, which shall have the force and effect of law; . . .

"The rules shall provide . . .

" (7) For a period of probation not to exceed six months before appointment or promotion is made complete, during which period a probationer may be discharged or reduced with the consent of the Commission. . . .

" (9) For temporary employment of persons on the eligible list. . . ."

Section 19.07 of the civil service rules provides:

"An employee who has not yet completed his first probationary period may be discharged or reduced in accordance with Rule 19.09 by the appointing power by written notice, served on the employee and a copy filed with the Commission, specifying the grounds and the particular facts on which the discharge or reduction is based. Such an employee shall be entitled to answer, explain, or deny, the charges in writing within ten business days *but shall not be entitled to a hearing, except in case of fraud or of discrimination because of political or religious opinions,* racial extraction, or organized labor membership." (Emphasis added.)

Section 19.09 states in pertinent part:

"If the Commission has consented prior to the filing of an answer by the employee and such answer alleges fraud, or discrimination as above stated, and requests a hearing, the Commission shall immediately set aside its consent. The hearing shall be limited to the question of fraud or discrimination. After such hearing the Commission may consent to

the discharge or may order such employee reinstated, and unless such order otherwise provides, it shall be effective as of the date of the discharge or reduction.

"No consent need be secured to the discharged or reduction of a temporary or recurrent employee."

It is undisputed that petitioner Globe had "not yet completed his first probationary period" and was employed only on a temporary, eligible basis. The record discloses that a written notice was served upon him specifying the reason for his discharge—insubordination and a violation of section 1028.1 of the Government Code.

The right to discharge a public employee for refusal to testify under the circumstances here involved, the fact that his refusal constituted insubordination, and the conclusion that either disloyalty or insubordination establishes unfitness have been determined by prior judicial decisions. (*Board of Education* v. *Mass,* 47 Cal.2d 494 [304 P.2d 1015]; *Steinmetz* v. *California State Board of Education,* 44 Cal.2d 816 [285 P.2d 617].) Petitioner at no time has denied that he refused to testify before the House Subcommittee on Un-American Activities and answer questions relating to his past or present knowing membership in the Communist Party. At no time has the cause of petitioner's discharge been alleged to be anything but insubordination and a violation of section 1028.1, nor indeed under the record before us could it be. No question of opinion or political belief was involved. Under these circumstances no hearing on discharge was provided or permitted a temporary employee under the civil service rules, nor was the consent of the commission necessary. The Los Angeles County Charter (§ 34, art. IX) and the rules of the Los Angeles County Civil Service Commission (§§ 19.07 and 19.09) control on the issue whether a hearing had to be granted on discharge of an employee in petitioner's class. They require none. On the applicability of the charter and rules the court stated in *Cronin* v. *Civil Service Com.,* 71 Cal. App. 633, at pages 641-642 [236 P. 339]: "For this court now to hold that a hearing should be had by the Commission before a principal could discharge a deputy when none had been provided for in the charter, would be for this court to usurp the functions of the freeholders and to change their work in a material respect. This, it has neither the right nor the inclination to do. We must accept the charter as framed by the freeholders, and not attempt to enlarge its scope under the guise of judicial interpretation. Neither subdivision 13

of said section 34 of the charter nor rule XI, as prescribed by the Commission, provides for any hearing upon the charges preferred against a deputy before the principal may discharge him. All that is required by the charter and the rules of the Commission is that the officer discharging the deputy shall serve upon him, a reasonable time before his discharge, and file with the Commission, a statement of the reasons for the discharge."

Section 1028.1 of the Government Code, and similar legislation, providing that a public employee who fails or refuses on any ground whatsoever to answer questions propounded to him by a legislative committee relating to past and present knowing membership in the Communist Party shall be guilty of insubordination and of violating the section and shall be "dismissed from his employment in the manner provided by law," have been held constitutional. (*Board of Education* v. *Mass*, 47 Cal.2d 494 [304 P.2d 1015]; *Steinmetz* v. *California State Board of Education*, 44 Cal.2d 816 [285 P.2d 617].) Both the Legislature and the courts have declared that the Communist Party is a continuing conspiracy against our Government (Gov. Code, § 1027.5; Ed. Code, § 12600; *Black* v. *Cutter Laboratories*, 43 Cal.2d 788 [278 P.2d 905]), and without doubt the state has the power and authority to require county employees to testify on such subjects as a condition to continued employment. (*Adler* v. *Board of Education of New York*, 342 U.S. 485 [72 S.Ct. 380, 96 L.Ed. 517, 27 A.L.R.2d 472].) ██ Loyalty on the part of county employees is essential to the orderly and peaceful operation of government and is relative to fitness for such employment. Therefore a government employee may be required to disclose certain information relative to fitness and loyalty as a reasonable condition for retaining public employment even though the disclosures may in some cases constitute self-incrimination. (*Board of Education* v. *Mass, supra,* 47 Cal.2d 494; *Steinmetz* v. *California State Board of Education, supra,* 44 Cal.2d 816.) ██ Although by the terms of section 1028.1 of the Government Code petitioner must be discharged "in the manner provided by law," under the authority (charter and civil service rules) by which he was hired and held his employment, he as a temporary employee was not entitled to a hearing upon discharge. Therefore, as applied to him section 1028.1 does not require a hearing and a county temporary employee who is summarily discharged is discharged in the "manner provided by law." By refusing him a hearing

it is clear that no right was taken from petitioner which he otherwise would have had, or been entitled to.

In demanding a hearing regardless of his employment status, petitioner is in effect asking the court to equalize the rights of all civil service employees whether they be temporary, probationary or permanent. To do so would lose sight of the entire philosophy of civil service in government and destroy the distinction between the various classifications. The basic reasoning behind the "stepladder" classifications in civil service is the necessity for a trial period for both employee and employer. It is during this time the employer formulates its opinion of the suitability, capability, ability to work with others, stability and loyalty of the employee, and determines whether he will make a satisfactory permanent worker. During this period the employee, too, has the opportunity to determine whether he likes the work involved, conditions, personnel, etc., and wishes to remain. He may quit at any time. The employer also has the right to discharge him. As stated in *Parsons* v. *County of Los Angeles*, 37 Cal.App.2d 666, at page 672 [99 P.2d 1079]: "It is a well-settled rule of law that where there are no restrictive provisions the power of the appointment carries with it the power of removal. (*Fee* v. *Fitts, supra,* [108 Cal.App. 551 (291 P. 889)].) The legislature has ample authority to determine the manner in which city employees may be removed and it has undertaken to fix the procedure to be followed. Subject to the limitations expressly imposed, the proper executive officers may discharge." (See also *Neuwald* v. *Brock*, 12 Cal.2d 662 [86 P.2d 1047], *Snelling* v. *Civil Service Board*, 90 Cal.App.2d 865 [204 P.2d 358].) It is only after the employee has completed his probationary period and remains to become "permanent" that certain employment rights become available to him.

To hold on the one hand that under ordinary circumstances a temporary employee can be constitutionally validly discharged without a hearing and on the other that, if he is discharged for insubordination and a violation of section 1028.1, he must be given a full hearing is to allow privilege and destroy equality. To grant him a hearing because of his refusal to answer questions with reference to his membership in a communist organization is to grant him a status which the ordinary employee in this same classification does not have. Petitioner can demand no greater degree of privilege

than any other temporary county civil service employee regardless of any implied question of loyalty or disloyalty.

Petitioner contends that appellants make the same argument rejected in *Housing Authority of the City of Los Angeles* v. *Cordova*, 130 Cal.App.2d Supp. 883 [279 P.2d 215]. The housing authority contended that because the lease provided it could terminate a tenancy upon 10 days' notice it needed to give no reason for termination and could terminate if tenants refused to sign the ''Housing Loyalty Oath.'' There the court simply held that the right to public housing could not be based on the signing of a loyalty oath and a statutory right to public housing having been created this right could not be taken away without due process of law. This is quite another situation than the one at bar in which no statutory right exists in any event. It seems to this court that housing subversives does not present the same serious problem as hiring them.

Petitioner, defending the judgment of the lower court, relies heavily on *Slochower* v. *Board of Higher Education of N.Y. City*, 350 U.S. 551 [76 S.Ct. 637, 100 L.Ed. 692], and *Board of Education* v. *Mass*, 47 Cal.2d 494 [304 P.2d 1015], urging that under these authorities he is entitled to a full and complete hearing and a determination of whether his reasons for invoking the privilege are sufficient.

The petitioner, a temporary employee, does not fall within the framework of due process laid down in either of these two cases. In *Slochower* v. *Board of Higher Education of N.Y. City*, 350 U.S. 551 [76 S.Ct. 637, 100 L.Ed. 692], Professor Slochower, a permanent employee entitled to tenure under the state law, was summarily discharged by the board under a New York City charter provision. A New York statute gave a procedural right to a hearing before discharge to persons in the class of Slochower. The Supreme Court concluded there was a violation of due process in summarily dismissing him. However, the court also held that one does not have a constitutional right to government employment and ''he must comply with reasonable, lawful and non-discriminatory terms laid down by the proper authorities.'' (*Slochower* v. *Board of Higher Education of N.Y. City*, *supra*, p. 555.)

Thereafter, the case of *Board of Education* v. *Mass*, 47 Cal.2d 494 [304 P.2d 1015], involving the constitutionality of section 12604 of the Education Code was decided. Mass, an instructor at City College in San Francisco, had appeared

before a subcommittee of the House of Representatives and refused to answer questions asked of him regarding his membership in the Communist Party. He was later suspended without a hearing before the board of education for his refusal to testify. The court held that Mass was entitled to a hearing. Here again the employee enjoyed a specific statutory right to a hearing before discharge.

An analysis of both opinions discloses that the court determined the rights of employment and discharge under conditions of tenure, or permanency, wherein by statute the employee was entitled to a hearing, as compared with the temporary status of petitioner herein and his total lack of any right of hearing under the charter and civil service rules. The rights involved under the Slochower and Mass cases were of statutory origin and in each the statutory safeguards had been built into certain rights of tenure which required there could be no discharge in the manner provided by law until such time as a full and complete hearing had been granted. In the instant case there is no statutory right for a hearing prior to the discharge of petitioner, a temporary employee. Holding a temporary status only he had no basic right to either a hearing or to county employment and whatever his rights were must be measured by the county charter and the civil service rules adopted thereunder. The temporary status enjoyed by him distinguishes him from the permanency in the Slochower and Mass cases.

Petitioner contends that he was discharged for invoking his constitutional privilege and that the implication of guilt it carries was responsible for his discharge. Actually he was discharged because he was guilty of insubordination and of violating section 1028.1 of the Government Code. Whatever implication he wishes to attach to his having invoked the privilege is immaterial here. Section 1028.1 heretofore held constitutional defines the refusal to answer as "insubordination" which authorizes dismissal.

Petitioner also claims that all he did was to exercise a constitutional privilege in refusing to answer the questions and that his discharge without a hearing therefore was a violation of due process.

At the outset a temporary employee has no vested right to county employment and may therefore be discharged summarily. (*Bailey* v. *Richardson*, 182 F.2d 46 [86 App.D.C. 248], affirmed by an equally divided court, 341 U.S. 918 [71 S.Ct. 669, 95 L.Ed. 1352]; *Friedman* v. *Schwellenbach,* 159

F.2d 22 [81 App.D.C. 365], cert. den.) Although involving federal civil service, these cases are persuasive here. The court in the Bailey case recognized that Congress had provided the President of the United States with authority to prescribe regulations for the admission of persons into civil service and for their discharge. The court held that a summary discharge of a probational appointee was proper and without constitutional objection. At page 58, it stated: "Due process of law is not applicable unless one is being deprived of something to which he has a right." The holding in the Friedman case is similar to that in the Bailey case. The facts therein relative to status are practically identical with those in the instant case. The dismissal without a hearing was upheld. In the case of *Parker* v. *Lester*, 227 F.2d 708, on the issue of due process the court stated at page 716: "When it is proposed to take from a citizen through administrative proceedings some right which he otherwise would have, it has always been held that the constitutional requirement is that he shall be afforded notice and an opportunity to be heard."

We fail to see what it is to which petitioner "has a right" for which a hearing must be given. Because of his temporary employment status he is, at the most, only an applicant for a permanent position. Of interest in this connection is the analogous situation expressed in *Bailey* v. *Richardson, supra,* 182 F.2d 46, at page 55: "If her status was merely that of an applicant for appointment, as we think it was, her nonappointment involved no procedural constitutional rights. Obviously, an applicant for office has no constitutional right to a hearing or a specification of the reasons why he is not appointed."

Furthermore, due process does not always require a hearing even where vested rights are involved. Defining "due process" the United States Supreme Court, speaking through Mr. Justice Frankfurter, stated in *Joint Anti-Fascist Refugee Committee* v. *McGrath,* 341 U.S. 123, at page 162 [71 S.Ct. 624, 95 L.Ed. 817]: "Due process is not a mechanical instrument. It is not a yardstick. It is a process. It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process. . . . The Court has responded to the infinite variety and perplexity of the tasks of government by recognizing that what is unfair in one situation may be fair in another. . . . Whether the ex parte procedure to which the petitioners were subjected duly observed 'the rudiments of

fair play,' (citing cases) cannot, therefore, be tested by mere generalities or sentiments abstractly appealing. The precise nature of the interest that has been adversely affected, the manner in which this is done, the reasons for doing it, the available alternatives to the procedure that was followed, the protection implicit in the office of the functionary whose conduct is challenged, the balance of hurt complained of and good accomplished—these are some of the considerations that must enter into the judicial judgment.'' We are satisfied petitioner in the case at bar has been treated fairly at all stages of his employment and dismissal.

As to the applicability of the Fourteenth Amendment of the United States Constitution, or article I, section 13 of the California Constitution, the court in *Bailey* v. *Richardson, supra,* said at page 57: ''The due process clause provides: 'No person shall . . . be deprived of life, liberty, or property, without due process of law; . . .' It has been held repeatedly and consistently that Government employ is not 'property' and that in this particular it is not a contract. We are unable to perceive how it could be held to be 'liberty'. Certainly it is not 'life'. So much that is clear would seem to dispose of the point. In terms the due process clause does not apply to the holding of a Government office.'' Referring to the First and Sixth Amendment infringements, the court stated at page 60: ''The situation of the Government employee is not different in this respect from that of private employees. A newspaper editor has a constitutional right to speak and write as he pleases. But the Constitution does not guarantee him a place in the columns of a publisher with whose political views he does not agree,'' and again at page 61: ''No one denies Miss Bailey the right to any political activity or affiliation she may choose. What is denied her is Government employ. The argument upon the clear and present danger rule, therefore, must be that Miss Bailey has a right to Government employ unless her presence there would constitute a clear and present danger. There simply is no such right. To state the proposition is to demonstrate its untenability.''

In the instant case it is clear that the controlling provision of the charter and civil service rules permit no hearing prior to discharge of those in Globe's class. There is no reason why petitioner should be permitted to claim and secure any extraordinary rights merely because he was insubordinate and refused to answer questions about his communist affiliations. He had no basic right to county employment in the

first instance. No hearing as a matter of either constitutional or statutory right had to be granted an employee in Globe's position.

Untenable is petitioner's contention that the Congressional Committee was not a duly authorized committee for the reason that the authorizing resolution was too broad and vague in its terminology which empowered the committee to investigate un-American and subversive activities and all other questions in relation thereto, without adequately or at all limiting or defining such terms. This point is predicated upon the case of *Watkins* v. *United States*, 354 U.S. 178, 201 [77 S.Ct. 1173, 1 L.Ed.2d 1273], in which the court commented upon the indefinite nature of the authorization but did not hold the authorizing resolution unconstitutional. The facts in the Watkins case and in the instant controversy are entirely dissimilar, for in the Watkins case appellant was prosecuted for contempt after refusing to answer certain questions as to past Communist Party membership of other persons. Watkins had offered to answer any such questions pertaining to himself. In the present situation, certainly, there was no vagueness in reference to the subject matter of the inquiry or its relation to the investigative powers of the committee;—the employee was asked directly in regard to his own communistic activities and refused to answer such inquiries.

For the foregoing reasons, judgment is reversed.

White, P. J., and Fourt, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 12, 1958. Gibson, C. J., Carter, J., and Traynor, J., were of the opinion that the petition should be granted.