# NELSON ET AL. *v.* COUNTY OF LOS ANGELES ET AL.

No. 152.   Argued January 13, 1960.—Decided February 29, 1960.

1

2

A. L. *Wirin* and *Fred Okrand* argued the cause for petitioners. With them on the brief was *Nanette Dembitz.*

*Wm. E. Lamoreaux* argued the cause for respondents. With him on the brief was *Harold W. Kennedy.*

*Murray A. Gordon* filed a brief for the National Association of Social Workers, as *amicus curiae,* urging reversal.

MR. JUSTICE CLARK delivered the opinion of the Court.

Petitioners, when employees of the County of Los Angeles, California, were subpoenaed by and appeared before a Subcommittee of the House Un-American Activities Committee, but refused to answer certain questions concerning subversion. Previously, each petitioner had been ordered by the County Board of Supervisors to answer any questions asked by the Subcommittee relating to his subversive activity, and § 1028.1 of the Government Code of the State of California [1] made it the duty of any

---

[1] California Government Code, § 1028.1:

"It shall be the duty of any public employee who may be subpenaed or ordered by the governing body of the state or local agency by which such employee is employed, to appear before such governing body, or a committee or subcommittee thereof, or by a duly authorized committee of the Congress of the United States or of the Legislature of this State, or any subcommittee of any such

public employee to give testimony relating to such activity on pain of discharge "in the manner provided by law." Thereafter the County discharged petitioners on the ground of insubordination and violation of § 1028.1 of the Code. Nelson, a permanent social worker employed by the County's Department of Charities, was, upon his request, given a Civil Service Commission hearing which resulted in a confirmation of his discharge. Globe was a temporary employee of the same department and was denied a hearing on his discharge on the ground that, as such, he was not entitled to a hearing under the Civil Service Rules adopted pursuant to the County Charter. Petitioners then filed these petitions for mandates seeking

committee, to appear before such committee or subcommittee, and to answer under oath a question or questions propounded by such governing body, committee or subcommittee, or a member or counsel thereof, relating to:

"(a) Present personal advocacy by the employee of the forceful or violent overthrow of the Government of the United States or of any state.

"(b) Present knowing membership in any organization now advocating the forceful or violent overthrow of the Government of the United States or of any state.

"(c) Past knowing membership at any time since October 3, 1945, in any organization which, to the knowledge of such employee, during the time of the employee's membership advocated the forceful or violent overthrow of the Government of the United States or of any state.

"(d) Questions as to present knowing membership of such employee in the Communist Party or as to past knowing membership in the Communist Party at any time since October 3, 1945.

"(e) Present personal advocacy by the employee of the support of a foreign government against the United States in the event of hostilities between said foreign government and the United States.

"Any employee who fails or refuses to appear or to answer under oath on any ground whatsoever any such questions so propounded shall be guilty of insubordination and guilty of violating this section and shall be suspended and dismissed from his employment in the manner provided by law."

4

reinstatement, contending that the California statute and their discharges violated the Due Process Clause of the Fourteenth Amendment. Nelson's discharge was affirmed by the District Court of Appeal, 163 Cal. App. 2d 607, 329 P. 2d 978, and Globe's summary dismissal was likewise affirmed, 163 Cal. App. 2d 595, 329 P. 2d 971. A petition for review in each of the cases was denied without opinion by the Supreme Court of California, three judges dissenting. 163 Cal. App. 2d 614, 329 P. 2d 983; 163 Cal. App. 2d 606, 329 P. 2d 978. We granted certiorari. 360 U. S. 928. The judgment in Nelson's case is affirmed by an equally divided Court and will not be discussed. We conclude that Globe's dismissal was valid.

On April 6, 1956, Globe was served with a subpoena to appear before the Subcommittee at Los Angeles. On the same date, he was served with a copy of an order of the County Board of Supervisors, originally issued February 19, 1952, concerning appearances before the Subcommittee. This order provided, among other things, that it was the duty of any employee to appear before the Subcommittee when so ordered or subpoenaed, and to answer questions concerning subversion. The order specifically stated that any "employee who disobeys the declaration of this duty and order will be considered to have been insubordinate . . . and that such insubordination shall constitute grounds for discharge . . . ." [2] At the appointed time, Globe appeared before the Subcommittee and was interrogated by its counsel concerning his familiarity with the John Reid Club. He claimed that this was a matter which was entirely his "own business," and, upon being

---

[2] This original order was the forerunner of § 1028.1 of the California Government Code, enacted in 1953, which with certain refinements embodied the requirements of the order into state law. It is against this section that petitioner levels his claims of unconstitutionality. See note 1, *supra*.

pressed for an answer, he stated that the question was "completely out of line as far as my rights as a citizen are concerned, [and] I refuse to answer this question under the First and Fifth Amendments of the Constitution of the United States." On the same grounds he refused to answer further questions concerning the Club, including one relating to his own membership. Upon being asked if he had observed any Communist activities on the part of members of the Club, Globe refused to answer, and suggested to committee counsel "that you get one of your trained seals up here and ask them." He refused to testify whether he was "a member of the Communist Party now" "on the same grounds" and "as previously stated for previous reasons." On May 2, by letter, Globe was discharged, "without further notice," on "the grounds that [he had] been guilty of insubordination and of violation of Section 1028.1 of the Government Code of the State of California . . . ." The letter recited the fact that Globe had been served with a copy of the Board order relating to his "duty to testify as a County employee . . . before said committee" and that, although appearing as directed, he had refused to answer the question, "Are you a member of the Communist Party now?" Thereafter Globe requested a hearing before the Los Angeles County Civil Service Commission, but it found that, as a temporary employee, he was not entitled to a hearing under the Civil Service Rules.[3] This the petitioner does not dispute.

---

[3] "19.07. *Probationary Period Following First Appointment.*

"An employee who has not yet completed his first probationary period may be discharged or reduced in accordance with Rule 19.09 by the appointing power by written notice, served on the employee and copy filed with the Commission, specifying the grounds and the particular facts on which the discharge or reduction is based. Such an employee shall be entitled to answer, explain, or deny the charges in writing within ten business days but shall not be entitled to a

6

However, Globe contends that, despite his temporary status, his summary discharge was arbitrary and unreasonable and, therefore, violative of due process. He reasons that his discharge was based on his invocation before the Subcommittee of his rights under the First and Fifth Amendments. But the record does not support even an inference in this regard, and both the order and the statute upon which the discharge was based avoided it. In fact, California's court held to the contrary, saying, "At no time has the cause of petitioner's discharge been alleged to be anything but insubordination and a violation of section 1028.1, nor indeed under the record before us could it be." 163 Cal. App. 2d, at 599, 329 P. 2d, at 974. Moreover, this finding is buttressed by the language of the order and of California's statute. Both require the employee to answer any interrogation in the field outlined. Failure to answer "on any ground whatsoever any such questions" renders the employee "guilty of insubordination" and requires that he "be suspended and dismissed from his employment in the manner provided by law." California law in this regard, as declared by its court, is that Globe "has no vested right to county employment and may therefore be discharged summarily." We take this interpretation of California law as binding upon us.

We, therefore, reach Globe's contention that his summary discharge was nevertheless arbitrary and unreasonable. In this regard he places his reliance on *Slochower* v. *Board of Education,* 350 U. S. 551 (1956). However,

_____

hearing, except in case of fraud or of discrimination because of political or religious opinions, racial extraction, or organized labor membership."

"19.09. *Consent of Commission.*

.       .       .       .       .

"No consent need be secured to the discharge or reduction of a temporary or recurrent employee."

the New York statute under which Slochower was discharged specifically operated "to discharge every city employee who invokes the Fifth Amendment. In practical effect the questions asked are taken as confessed and made the basis of the discharge." *Id.*, at 558. This "built-in" inference of guilt, derived solely from a Fifth Amendment claim, we held to be arbitrary and unreasonable. But the test here, rather than being the invocation of any constitutional privilege, is the failure of the employee to answer. California has not predicated discharge on any "built-in" inference of guilt in its statute, but solely on employee insubordination for failure to give information which we have held that the State has a legitimate interest in securing. See *Garner* v. *Board of Public Works of Los Angeles*, 341 U. S. 716 (1951); *Adler* v. *Board of Education*, 342 U. S. 485 (1952). Moreover it must be remembered that here—unlike *Slochower*—the Board had specifically ordered its employees to appear and answer.

We conclude that the case is controlled by *Beilan* v. *Board of Education of Philadelphia*, 357 U. S. 399 (1958), and *Lerner* v. *Casey*, 357 U. S. 468 (1958). It is not determinative that the interrogation here was by a federal body rather than a state one, as it was in those cases. Globe had been ordered by his employer as well as by California's law to appear and answer questions before the federal Subcommittee. These mandates made no reference to Fifth Amendment privileges. If Globe had simply refused, without more, to answer the Subcommittee's questions, we think that under the principles of *Beilan* and *Lerner* California could certainly have discharged him. The fact that he chose to place his refusal on a Fifth Amendment claim puts the matter in no different posture, for as in *Lerner, supra,* at 477, California did not employ that claim as the basis for drawing an inference of guilt. Nor do we think that this discharge

8

is vitiated by any deterrent effect that California's law might have had on Globe's exercise of his federal claim of privilege. The State may nevertheless legitimately predicate discharge on refusal to give information touching on the field of security. See *Garner* and *Adler, supra.* Likewise, we cannot say as a matter of due process that the State's choice of securing such information by means of testimony before a federal body[4] can be denied. Finally, we do not believe that California's grounds for discharge constituted an arbitrary classification. See *Lerner, id.,* at 478. We conclude that the order of the County Board was not invalid under the Due Process Clause of the Fourteenth Amendment.

Nor do we believe that the remand on procedural grounds required in *Vitarelli* v. *Seaton,* 359 U. S. 535 (1959), has any bearing here. First, we did not reach the constitutional issues raised in that case. Next, Vitarelli was a Federal Department of Interior employee who "could have been summarily discharged by the Secretary at any time without the giving of a reason." *Id.,* at 539. The Court held, however, that, since Vitarelli was dismissed on the grounds of national security rather than by summary discharge, and his dismissal "fell substantially short of the requirements of the applicable departmental regulations," it was "illegal and of no effect." *Id.,* at 545. But petitioner here raises no such point, and clearly asserts that "whether or not petitioner Globe was accorded a hearing is not the issue here."[5] He bases his whole case on the claim "that due process affords petitioner Globe protection against the State's depriving him of employment on this

---

[4] It is noteworthy that the California statute requires such information to be given before both state and federal bodies.

[5] Nor does petitioner make any attack on the failure of California's statute to afford temporary employees such as he an opportunity to explain his failure to answer questions. It will be noted that permanent employees are granted such a privilege.

arbitrary ground" of his refusal on federal constitutional grounds to answer questions of the Subcommittee. Having found that on the record here the discharge for "insubordination" was not arbitrary, we need go no further.

We do not pass upon petitioner's contention as to the Privileges and Immunities Clause of the Fourteenth Amendment, since it was neither raised in nor considered by the California courts. The judgments are.

*Affirmed.*

MR. CHIEF JUSTICE WARREN took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, whom MR. JUSTICE DOUGLAS joins, dissenting.

Section 1028.1 of the California Code, as here applied, provides that any California public employee who refuses to incriminate himself when asked to do so by a Congressional Committee "shall be suspended and dismissed from his employment in the manner provided by law." The Fifth Amendment, which is a part of the Bill of Rights, provides that no person shall be compelled to incriminate ("to be a witness against") himself. The petitioner, Globe, an employee of the State of California, appeared before the House Un-American Activities Committee of the United States Congress and claimed this federal constitutional privilege. California promptly discharged him, as the Court's opinion says, for "insubordination and violation of § 1028.1 of the Code." The "insubordination and violation" consisted exclusively of Globe's refusal to testify before the Congressional Committee; a ground for his refusal was that his answers might incriminate him. It is beyond doubt that the State took Globe's job away from him only because he claimed his privilege under the Federal Constitution.

Here, then, is a plain conflict between the Federal Constitution and § 1028.1 of the California Code. The Federal Constitution told Globe he could, without penalty, refuse to incriminate himself before any arm of the Federal Government; California, however, has deprived him of his job solely because he exercised this federal constitutional privilege. In giving supremacy to the California law, I think the Court approves a plain violation of Article VI of the Constitution of the United States which makes that Constitution "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." I also think that this discharge under state law is a violation of the Due Process Clause of the Fourteenth Amendment in its authentic historical sense: that a State may not encroach upon the individual rights of people except for violation of a law that is valid under the "law of the land." "Law of the land" of necessity includes the supreme law, the Constitution itself.

The basic purpose of the Bill of Rights was to protect individual liberty against governmental procedures that the Framers thought should not be used. That great purpose can be completely frustrated by holdings like this. I would hold that no State can put any kind of penalty on any person for claiming a privilege authorized by the Federal Constitution. The Court's holding to the contrary here does not bode well for individual liberty in America.

Mr. Justice Brennan, with whom Mr. Justice Douglas joins, dissenting.

This is another in the series of cases involving discharges of state and local employees from their positions after they claim their constitutional privilege against self-incrimination before investigating committees. See *Slochower* v. *Board of Higher Education,* 350 U. S. 551;

*Beilan* v. *Board of Public Education,* 357 U. S. 399; *Lerner* v. *Casey,* 357 U. S. 468. While I adhere on this matter of constitutional law to the views I expressed in dissent in the latter two cases, 357 U. S., at 417, it is enough to say here that I believe this case to be governed squarely by *Slochower,* and on that basis I put my dissent. Of course this opinion is limited solely to Globe's discharge.

California has commanded that its employees answer certain broad categories of questions when propounded to them by investigating bodies, including federal bodies such as the Subcommittee of the Un-American Activities Committee involved here. Cal. Government Code § 1028.1. Invocation of the privilege against self-incrimination before such a body, in response to questions of those sorts, is made a basis for discharge.[1] In the case

---

[1] The Court appears to treat the fact that the California statute is not in terms directed at the exercise of the privilege against self-incrimination, but rather covers all refusals to answer, as a factor militating in favor of its validity. The Court seems to view the privilege against self-incrimination as a somewhat strange and singular basis on which to decline to answer questions put in an investigation; or at most as an individual private soldier in a large army of reasons that might commonly be given for declining to respond. I am afraid I must view the matter more realistically. But even if the statute were taken as wholeheartedly at face value as the Court does, the consequence would not be that it was more reasonable, but rather that it was more arbitrary. It hardly avoids the rationale of this Court's decision in the *Slochower* case if the State adds other constitutional privileges to the list, exercise of which results *per se* in discharge. Such a statute would be even the more undifferentiating and arbitrary in its basis for discharge than the one involved in *Slochower.* And of course the crowning extent of arbitrariness is exposed by the contention that the fact that discharge would have followed a refusal to answer predicated on no reason at all justifies discharge upon claim of a constitutional privilege. It would appear of the essence of arbitrariness for the State to lump together refusals to answer based on good reasons and those based

of a permanent employee, it is held that discharge may come only after a hearing at which the employee is given, at least, an opportunity to explain his exercise of the privilege. *Board of Education* v. *Mass*, 47 Cal. 2d 494, 304 P. 2d 1015. But for a temporary or probationary employee like Globe the state law, as interpreted authoritatively by the California courts below, requires a discharge of the employee upon his claim of the privilege, without further ado. 163 Cal. App. 2d, at 605–606, 329 P. 2d, at 978. Opportunity for an explanation by the employee or for administrative consideration of the circumstances of the claim of privilege is foreclosed under the state law.

In *Slochower,* this Court had a substantially identical situation before it. There a local law which made a claim of the constitutional privilege "equivalent to a resignation" was struck down as violative of the Due Process Clause of the Fourteenth Amendment. Only one word is necessary to add here to the Court's statement there of its reason for voiding the provision: "As interpreted and applied by the state courts, it operates to discharge every [temporary] . . . employee who invokes the Fifth Amendment. In practical effect the questions asked are taken as confessed and made the basis of the discharge. No consideration is given to such factors as the subject matter of the questions, remoteness of the period to which they are directed, or justification for exercise of the privilege. It matters not whether the plea resulted from mistake, inadvertence or legal advice conscientiously given, whether wisely or unwisely. The heavy hand of the statute falls alike on all who exercise their constitutional privilege, the full enjoyment of which every person is entitled to receive." 350 U. S., at 558.

on no reason at all, and make discharge automatically ensue on all. What was struck down in *Slochower* as unconstitutionally arbitrary— undifferentiating treatment merely among those pleading the self-incrimination privilege—seems almost reasonable by comparison.

The Court distinguished instances in which the employing government itself might be conducting an investigation into the "fitness" of the employee.

As applied, then, to temporary or probationary employees, the California statute contains the identical vice of automatic discharge for a Fifth Amendment plea made before another body, not concerned with investigating the "fitness" of the employee involved. It is sought here to equate Globe's case with those of Beilan and Lerner. But in the latter cases the Court took the view that the state discharges were sustainable because the employees' pleas of self-incrimination before local administrative agency investigations of their competence and reliability prevented those employing bodies from having an adequate record on which to reach an affirmative conclusion as to their competence and reliability. This failure to cooperate fully (styled lack of candor) within the framework of the employer's own proceeding to determine fitness, was said to be a constitutional basis for discharge. 357 U. S., at 405–408; 357 U. S., at 475–479; and see 357 U. S., at 410 (concurring opinion). But here there was not the vaguest semblance of any local administrative procedure designed to determine the fitness of Globe for further employment.[2] It has not been hitherto suggested that the authorizing resolutions of the Un-American Activities Committee extend to enabling it to perform these functions on a grant-in-aid basis to the States. Accordingly there is presented here the very same arbitrary action—the drawing of an infer-

---

[2] In *Slochower* it was said, "It is one thing for the city authorities themselves to inquire into Slochower's fitness, but quite another for his discharge to be based entirely on events occurring before a federal committee whose inquiry was announced as not directed at 'the property, affairs, or government of the city, or . . . official conduct of city employees.'" 350 U. S., at 558. This distinction was asserted in *Beilan* and *Lerner*. 357 U. S., at 408; 357 U. S., at 477.

ence of unfitness for employment from exercise of the privilege before another body, without opportunity to explain on the part of the employee, or duty on the part of the employing body to attempt to relate the employee's conduct specifically to his fitness for employment—as was involved in *Slochower*. There is the same announced abdication of the local administrative body's own function of determining the fitness of its employees, in favor of an arbitrary and *per se* rule dependent on the behavior of the employee before another body not charged with determining his fitness.

It is said that this case differs from *Slochower* because that case involved a determination, based on his invocation of the privilege, that the employee was guilty of substantive misconduct, while this one simply involves a case of "insubordination" in the employee's failure to answer questions asked by the Congressional Committee which the employing agency has ordered be answered. In the first place, *Slochower* did not involve any finding by the New York authorities that the employee was guilty of the matters as to which he claimed the privilege. The claim of the privilege was treated by the State as equivalent to a resignation, 350 U. S., at 554, and it was only "in practical effect," *id.*, at 558, that the questions asked were taken as confessed; [3] that is, the State claimed the power to take the same action, discharge of the employee from employment, upon a plea of the privilege, as it could have taken upon a confession of the matters charged. The case involved an inference of unfitness for office, then, drawn arbitrarily and without opportunity to explain, from the assertion of the privilege. The same is involved here, and the thin patina of "insubordination" that the

---

[3] The opinion in the New York Court of Appeals also makes it quite clear that Slochower was not being discharged as guilty of the matters inquired about. *Daniman* v. *Board of Education*, 306 N. Y. 532, 538, 119 N. E. 2d 373, 377.

statute encrusts on the exercise of the privilege does not change the matter. If the State labeled as "insubordination" and mandatory ground for discharge every failure by an employee to respond to questions asked him by strangers on the street, its action would be as pointless as it was arbitrary. The point of the direction given to all employees here to answer the sort of questions covered by the statute must have been that the State thought that the matters involved in the questions bore some generic relationship to the "fitness" of the employee to hold his position. But on this basis the case is again indistinguishable from *Slochower*. If it is unconstitutionally arbitrary for the State to treat every invocation of the privilege as conclusive on his fitness and in effect as an automatic discharge, then the command of the State that no temporary employee shall claim the privilege under pain of automatic discharge must be an unconstitutionally arbitrary command. A State could not, I suppose, discharge an employee for attending religious services on Sunday, see *Wieman* v. *Updegraff,* 344 U. S. 183, 192; and equally so it could not enforce, by discharges for "insubordination," a general command to its employees not to attend such services.

The state court distinguished this case from *Slochower* on the grounds that Slochower was a state employee with tenure, but Globe was a temporary or probationary employee not entitled to a hearing on discharge. On this basis, it concluded that the requirement outlined by this Court in *Slochower*—that he could not be discharged *ipso facto* on his claim of the privilege, but only after a more particularized inquiry administered by his employer—did not apply. 163 Cal. App. 2d, at 601–603, 329 P. 2d, at 975–976. But this Court has nothing to do with the civil service systems of the States, as such. And Globe does not here contend that he could not have been discharged without a hearing; but he does attack the

specified basis of his discharge. Doubtless a probationary employee can constitutionally be discharged without specification of reasons at all; and this Court has not held that it would offend the Due Process Clause, without more, for a State to put its entire civil service on such a basis, if as a matter of internal polity it could stand to do so. But if a State discharged even a probationary employee because he was a Negro or a Jew, giving that explicit reason, its action could not be squared with the Constitution. So with Slochower's case; this Court did not reverse the judgment of New York's highest court because it had disrespected Slochower's state tenure rights, but because it had sanctioned administrative action taken expressly on an unconstitutionally arbitrary basis. So here California could have summarily discharged Globe, and that would have been an end to the matter; without more appearing, its action would be taken to rest on a permissible judgment by his superiors as to his fitness. But if it chooses expressly to bottom his discharge on a basis—like that of an automatic, unparticularized reaction to a plea of self-incrimination—which cannot by itself be sustained constitutionally, it cannot escape its constitutional obligations on the ground that as a general matter it could have effected his discharge with a minimum of formality. Cf. *Vitarelli* v. *Seaton,* 359 U. S. 535, 539.

For these reasons the judgment as to Globe should be reversed.