383 F.2d 364
 UNIFORMED SANITATION MEN ASSOCIATION, Inc., et al.,
Plaintiffs-Appellants,
v.
COMMISSIONER OF SANITATION OF the CITY OF NEW YORK,
Commissioner ofInvestigation of the City of New
York, and the City of New York,
Defendants-Appellees.
 No. 381, Docket 31014.
 United States Court of Appeals Second Circuit.
 Argued March 23, 1967.
Decided Sept. 20, 1967.
 
 Leonard B. Boudin, New York City (Victor Rabinowitz, New York City, of counsel, Rabinowitz & Boudin, Morris Weissberg, and John J. DeLury, New York City, on the brief), for appellants.
 John J. Loflin, Jr., New York City (Frederic S. Nathan, New York City, and Robert C. Dinerstein, New York City, of counsel, J. Lee Rankin, Corporation Counsel of the City of New York, on the brief), for appellees.
 Before MOORE and HAYS, Circuit Judges, and DOOLING, District Judge.*
 HAYS, Circuit Judge:
 
 
 1
 This is an appeal from an order of the United States District Court for the Southern District of New York in an action to enjoin defendants from violating plaintiffs' constitutional rights, denying plaintiffs' motions for summary judgment and granting defendants' motion to dismiss the complaint. We affirm the dismissal of the complaint, although on grounds different from those on which the district court relied.
 
 
 2
 There is no dispute as to the material facts. Some time in 1966 the defendant Commissioner of Investigation of the City of New York was informed that employees in the Department of Sanitation were not charging private cartmen the proper fees for use of City facilities at the Marine Transfer Station, located at 91st Street and the East River in Manhattan, and that these employees were diverting to themselves the proceeds of the fees they did charge, thus causing the City to lose hundreds of thousands of dollars of revenue. Exercising his powers under Section 803(2) of the New York City Charter,[1] the Commissioner undertook an investigation of these irregularities. He obtained a court order in the Supreme Court, New York County, under the provisions of Section 813-a of the Code of Criminal Procedure of the State of New York,[2] authorizing him to tap a certain telephone leased by the Department of Sanitation for the transaction of official business at the Marine Transfer Station.
 
 
 3
 Thereafter in November, 1966, the Commissioner or a deputy in the Commissioner's office questioned each of the individual plaintiffs[3] concerning his duties and employment and his activities at the Marine Transfer Station. At these hearings the employee was advised of his constitutional rights, including his right to counsel, his right to remain silent and his right not to be compelled to be a witness against himself.[4] However, the employees were further advised that:
 
 
 4
 'If you do refuse to testify or to answer any question regarding the affairs of the City or regarding your official conduct or the conduct of any other officer or employee of the City on the ground that your answer would tend to incriminate you, your term or tenure of office or employment shall terminate and you shall not be eligible to election or appointment to any office or employment under the City or any agency, in accordance with the provisions of Section 1123 of the New York City Charter.'[5]
 
 
 5
 They were also told that, under the judicially authorized wiretap, recordings had been made of their conversations on the Marine Transfer Station telephone.
 
 
 6
 Twelve of the plaintiffs, asserting the constitutional privilege against self-incrimination (see Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)), refused to testify, three answered the questions put to them and did not assert the privilege, and one refused to testify claiming to be incompetent.[6] On December 2, 1966 all the appellants were suspended by the defendant Commissioner of Sanitation. The twelve who had invoked the privilege against self-incrimination were advised that their suspensions were based on their refusals to testify as provided by Section 1123 of the City Charter. The other appellants were advised by the Commissioner of Sanitation that their suspensions were 'based upon information received from the Commissioner of Investigation concerning irregularities arising out of your employment in the Department of Sanitation.'
 
 
 7
 Appellants sought a declaratory judgment that the suspensions under Section 1123 of the City Charter violate their rights under the Fifth and Fourteenth Amendments to the United States Constitution and that the wiretapping authorized by Section 813-a of the New York Code of Criminal Procedure violates the Federal Communications Act of 1934, 47 U.S.C. 605[7] and also impairs their rights under the Fourteenth Amendment. They ask for an injunction reinstating them to their positions and prohibiting defendants from continuing the wiretap and from using against them information obtained by wiretapping.
 
 
 8
 What we have said constitutes the factual background of the case as it appears in the record and as it was presented to the district court. It is important, however, to consider certain events which have occurred since the district court's decision was rendered and about which there is no dispute.
 
 
 9
 While the case was pending in the district court formal charges were issued against the appellants under Section 75 of the New York Civil Service Law, McKinney's Consol.Laws, c. 7.[8] In accordance with the requirements of that statute, disciplinary hearings were held at which appellants were represented by counsel. The twelve appellants who had invoked the privilege against self-incrimination were dismissed from their positions after these hearings. The evidence on which the dismissals were based consisted of the transcripts of the proceedings before the Commissioner of Investigation in which the appellants had asserted the privilege. Section 1123 of the City Charter was cited as the legal basis for the dismissals.
 
 
 10
 The other three employees, originally charged with having engaged in irregularities during the course of their employment, were summoned before the grand jury and asked to sign waivers of immunity. When they refused the Department of Sanitation served them with amended charges alleging that by refusing to waive their immunity they had violated Section 1123. After hearings pursuant to Section 75 of the Civil Service Law, they too were discharged for having violated Section 1123.
 
 
 11
 It may well be argued that the action should have been dismissed by the district court on the ground that plaintiffs had failed to exhaust their administrative remedies. However we would be taking a futilely overtechnical position if we refused to consider the administrative action taken since the district court rendered its decision. In the light of that action we cannot uphold dismissal on the ground of failure to exhaust administrative remedies.
 
 I.
 
 12
 Appellants contend that they have been deprived of their constitutional privilege against self-incrimination because, under Section 1123, they were compelled 'either to forfeit their jobs or to incriminate themselves', citing Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).
 
 
 13
 The district court abstained from deciding this issue on the ground that the Section should first be construed by the state courts. Cf. Holland v. Hogan, D.C., 272 F.Supp. 855, decided June 27, 1967 (statutory three-judge court). After the district court's decision and while the present appeal was pending the New York Court of Appeals decided the case of Gardner v. Broderick, 20 N.Y.2d 227, 229 N.E.2d 184, 282 N.Y.S.2d 487 (1967), the opinion in which authoritatively construed Section 1123. The Gardner case removed any ground there may have been for federal abstention.
 
 
 14
 We are therefore faced with the issue on appeal as to whether city employees who refuse to answer questions as to their conduct in office and who plead their privilege against self-incrimination are constitutionally protected against discharge. The answer seems to us to be clear. It was surely proper for a city official charged with the duty to do so to investigate charges of misfeasance in the operation of the Sanitation Department and in connection with such an investigation to question employees about their participation in activity which reflected the possibility of bribery and embezzlement. Can there be any reasonable doubt that an employee, especially one who has been warned of the consequences of his refusal to answer, can be (and, indeed, should be) discharged for such refusal?
 
 
 15
 An employee's 'failure to give information which * * * the State has a legitimate interest in securing' constitutes insubordination. Nelson v. County of Los Angeles, 362 U.S. 1, 7, 80 S.Ct. 527, 531, 4 L.Ed.2d 494 (1960).
 
 
 16
 There was no invasion of appellants' constitutional rights when they were dismissed from their employment for refusing to answer questions as to their conduct of their jobs.
 
 
 17
 Garrity v. State of New Jersey, supra, does not support appellants' position. In Garrity the Supreme Court held that testimony which was coerced by threat of loss of employment could not be used in a subsequent criminal proceeding. That holding has no application to the present case where the employees did not testify, but relied upon their claims of privilege.
 
 II.
 
 18
 We also hold that appellants' claim based on the Commissioner's wiretap was properly dismissed. No violation of the Federal Communications Act, 47 U.S.C. 605 (reprinted in note 6, supra), or deprivation of rights under the Fourth Amendment has been established.
 
 
 19
 The telephone on which appellants' conversations were overheard was leased by the City of New York and assigned to the Department of Sanitation for the conduct of its official business. There was no invasion of appellants' right of privacy since the telephone was not a private telephone nor did it belong to appellants.
 
 
 20
 The 'search' was not unreasonable within the meaning of the Fourth Amendment. The conversations overheard were being conducted in the course of the discharge of appellants' official duties. The content of these conversations is analogous in some ways to official documents which are not protected against such a search.
 
 
 21
 'In the case of public records and official documents, made or kept in the administration of public office, the fact of actual possession or of lawful custody would not justify the officer in resisting inspection, even though the record was made by himself and would supply the evidence of his criminal dereliction. If he has embezzled the public moneys and falsified the public accounts he cannot seal his official records and withhold them from the prosecuting authorities on a plea of constitutional privilege against self-incrimination.' Wilson v. United States, 221 U.S. 361, 380, 31 S.Ct. 538, 544, 55 L.Ed. 771 (1911). See Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946).
 
 
 22
 In United States v. Collins, 349 F.2d 863 (2d Cir. 1965), cert. denied, 383 U.S. 960, 86 S.Ct. 1228, 16 L.Ed.2d 303 (1966), objection was raised on constitutional grounds to the introduction of evidence of mail theft where the evidence was obtained from a search of defendant's work jacket. We said at p. 868:
 
 
 23
 'We hold, then, that, in the circumstances of this case, the search by government agents who were investigating the theft of property connected with the defendant's employment, of defendant's work jacket hanging in a public area in the Government office where he was employed, was reasonable within the intendment of the Fourth Amendment and, therefore, not unconstitutional.' See also State v. Giardina, 27 N.J. 313, 142 A.2d 609 (1958).
 
 
 24
 In our view the recent decision of the Supreme Court in Berger v. State of New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), has no bearing on the present case. In the Berger case 'trespassory intrusions into private, constitutionally protected premises' were claimed. The protection of privacy is not involved in our case where the conversations overheard were carried on in the course of the city's business over a telephone leased by the city for the purpose of such official use.
 
 
 25
 In Berger the Court held that the procedure prescribed by 813-a of the New York Code of Criminal Procedure was constitutionally insufficient, under the circumstances there presented, to justify the use in criminal proceedings of the evidence secured by eavesdropping. We hold in the case now before us only that, if resort to 813-a was necessary at all, the provisions of that Section provide whatever protection is needed for monitoring the conversations of the employees and for the use to which the monitored conversations were put.
 
 
 26
 The action of the district ocurt in dismissing the complaint for failure to state a claim on which relief can be granted is affirmed.
 
 
 
 *
 Of the Eastern District of New York, sitting by designation
 
 
 [1]
 Section 803(2) of the New York City Charter provides:
 'The Commissioner: 2. Is authorized and empowered to make any study or investigation which in his opinion may be in the best interests of the city, including but not limited to investigations of the affairs, functions, accounts, methods, personnel or efficiency of any agency.'
 
 
 [2]
 Section 813-a of the Code of Criminal Procedure provides:
 'Ex parte order for eavesdropping An ex parte order for eavesdropping as defined in subdivisions one and two of section seven hundred thirty-eight of the penal law may be issued by any justice of the supreme court * * * upon oath or affirmation of a district attorney, or of the attorney-general or of an officer above the rank of sergeant of any police department of the state or of any political subdivision thereof, that there is reasonable ground to believe that evidence of crime may be thus obtained, and particularly describing the person or persons whose communications, conversations or discussions are to be overhead, or recorded and the purpose thereof, and, in the case of a telegraphic or telephonic communication, identifying the particular telephone number or telegraph line involved. In connection with the issuance of such an order the justice * * * may examine on oath the applicant and any other witness he may produce and shall satisfy himself of the existence of reasonable grounds for the granting of such application. Any such order shall be effective for the time specified therein but not for a period of more than two months unless extended or renewed by the justice * * * who signed and issued the original order upon satisfying himself that such extension or renewal is in the public interest. * * *'
 
 
 [3]
 The Uniformed Sanitation Men Association, Inc., is the collective bargaining representative of the employees of the Department of Sanitation
 
 
 [4]
 At the beginning of each of the hearings the Commissioner of Investigation made substantially the following statement:
 'Q. Mr. (name of witness), this is a private hearing being conducted by the Department of Investigation of the City of New York, pursuant to Chapter 34, of the New York City Charter. The investigation in which you are about to testify relates particularly to the affairs, functions, accounts, methods, personnel and efficiency of the Department of Sanitation of the City of New York. I wish to advise you that you have all the rights and privileges guaranteed by the laws of the State of New York and the Constitutions of this State and of the United States, including the right to remain silent and the right not to be compelled to be a witness against yourself. I wish further to advise you that anything you say can be used against you in a court of law. You have the right to have an attorney present at this hearing, if you wish, and I understand that you are represented by counsel in the person of (name of attorney), is that correct?
 
 
 [5]
 Section 1123 of the New York City Charter provides:
 'Failure to testify.-- If any councilman or other officer or employee of the city shall, after lawful notice or process, wilfully refuse or fail to appear before any court or judge, any legislative committee, or any officer, board or body authorized to conduct any hearing or inquiry, or having appeared shall refuse to testify or to answer any question regarding the property, government or affairs of the city or of any county included within its territorial limits, or regarding the nomination, election, appointment or official conduct of any such officer or employee of the city or of any such county, on the ground that his answer would tend to incriminate him, or shall refuse to waive immunity from prosecution on account of any such matter in relation to which he may be asked to testify upon any such hearing or inquiry, his term or tenure of office or employment shall terminate and such office or employment shall be vacant, and he shall not be eligible ot election or appointment to any office or employment under the city or any agency.'
 
 
 [6]
 The parties agree that since the charges against his employee have been withdrawn his case is now moot
 
 
 [7]
 Section 605 of 47 U.S.C. provides:
 'Unauthorized publication or use of communications. * * * No person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; and no person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by wire or radio and use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto; and no person having received such intercepted communication or having become acquainted with the contents, substance, purport, effect, or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto * * *.'
 
 
 [8]
 Section 75 of the Civil Service Law provides in pertinent part:
 'Removal and other disciplinary action 1. Removal or disciplinary action. A person described in * * * this subdivision shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section. 2. Procedure. A person against whom removal or other disciplinary action is proposed shall have written notice thereof and of the reasons therefor, shall be furnished a copy of the charges preferred against him and shall be allowed at least eight days for answering the same in writing. The hearing upon such charges shall be held by the officer or body having the power to remove the person against whom such charges are preferred, or by a deputy or other person deisgnated by such officer or body in writing for that purpose. In case a deputy or other person is so designated, he shall, for the purpose of such hearing, be vested with all the powers of such officer or body and shall make a record of such hearing which shall, with his recommendations, be referred to such officer or body for review and decision. The person or persons holding such hearing shall, upon the request of the person against whom charges are preferred, permit him to be represented by counsel, and shall allow him to summon witnesses in his behalf. * * *'