**STATE of Missouri, Respondent,**

v.

**Charles Edward ROSS, Appellant.**

**No. 53304.**

Supreme Court of Missouri,

Division No. 1.

March 10, 1969.

John C. Danforth, Atty. Gen., Jefferson City, Jack L. Koehr, Special Asst. Atty. Gen., St. Louis, for respondent.

Joseph Noskay and George C. Hubel, St. Louis, for appellant.

HIGGINS, Commissioner.

Appellant was convicted by a jury of uttering a forged check, Section 561.011, V.A.M.S., and his punishment was assessed at 3-years' imprisonment in the state penitentiary. Sentence and judgment were rendered accordingly.

Appellant tacitly concedes that the state made a submissible case and a brief statement of evidence so demonstrates. On January 16, 1967, Curtis M. Taylor, assistant manager of IGA Foodliner at 4811 Delmar, St. Louis, Missouri, cashed a check, Exhibit 1, presented by appellant, for $113.88, purportedly drawn on E. M. Harris, payable to Charles Ross and endorsed "Charles Ross." Edward M. Harris was in the construction business and his place of business, the E. M. Harris Building

Company, had been burglarized December 30, 1966, at which time his checkbook and check imprinter or protector were stolen. Exhibit 1 was one of the series of stolen checks. The signature on Exhibit 1, "E. M. Harris," was not his signature. Arnold Crader, cashier of the Bank of St. Ann, refused to pay the check when it was presented because the signature, "E. M. Harris," was not genuine. Appellant admitted to Officer Fred Abernathy that he passed the check. Officer Glenn Lodl arrested appellant and went with him to 4822 Leduc where, according to the officer, appellant gave him the check imprinter, some checks prepared for cashing, and some blank checks, all from the stolen book. Appellant admitted cashing the check and receiving money for it, his version being that he obtained the check from a Charles Lang to whom he had given permission to use his name, and that he cashed the check for Lang not knowing it to be a forgery.

The sole question is whether the court erred in overruling appellant's pretrial motion to suppress the check protector and checks and his in-trial objection to their receipt in evidence.

The motion to suppress was heard by the court prior to impaneling of the jury. Officers Lodl and Flynn stated they stopped an automobile the night of February 18, 1967, for failure to have proper lights displayed. Appellant was on the passenger's side and was arrested for letting the driver, William Lang, use his motor vehicle operator's license. When appellant was ordered out of the automobile, he was seen to drop a check to the floor of the vehicle. Appellant admitted obtaining that check, some other checks, and a check protector in a burglary he had previously committed. According to the officers, appellant wanted to make a clean breast of the matter and went with them to two addresses. At the address where he lived, 4822 Leduc, he gave them a check protector and other checks similar to the one dropped by appellant and the one cashed at IGA. Appellant's version was that the officers searched the automobile and found the check in the glove compartment. He denied making any admission of participation in a burglary or of owning the checks and check protector. According to him, the officers unlocked the house at 4822 Leduc with a key taken from appellant. The house had been secured by his sister; he, his mother, and a brother lived there; and he, his mother, and the brother shared the rental and utility expenses, he and his brother paying their shares to the mother and she, in turn, paying the landlord and the utilities. He denied giving permission to search the six-room flat at 4822 Leduc and there was no evidence that his sister, mother, or brother gave such permission. The evidence sought to be suppressed, the checkwriter and blank checks, was found in the brother's bedroom and, according to appellant, "We pay the rent. The rent is interweaved in the whole house. Are you talking about one specific part of the house, paying rent for? Q Yes, sir. A No, it was never considered that way." He had permission from his mother and brother to occupy all six rooms.

As acknowledged in respondent's brief, the court overruled the motion to suppress "on the grounds that the only person who can object to an illegal search of premises is the one lawfully in possession," and that appellant did not so qualify. In the court's words, "Now, here, this testimony shows, and find that the defendant was merely a bare occupant of the premises * * *, those were not his premises, and nothing was seized in his part of the premises, even if he was the renter of them. He said his sister rented the premises, and his mother was the one paying the rent—they contributed to her, she dealt with the landlord. They would be her premises because she would be the head of the household under this testimony; * * * He would have no right to object on his testimony. The officers, of course, testified otherwise, but I took it on his basis, the statement of his testimony." In respect to search by consent or permission, the court said, "No, I'm not rejecting or disregarding anybody's testimony, except in this regard. On tak-

ing the testimony of the defendant, itself, and giving it the most favorable ruling I can, accepting it all as true, he doesn't qualify under these decisions for search and seizure."

The search was made without a warrant; the record reflects that the court ruled the motion on appellant's lack of standing to object to the search and not upon any permission or consent which might flow from testimony of the officers, State v. Young, Mo., 425 S.W.2d 177, 181, fn. 3; and, since the search was conducted at a place other than the scene of arrest, it could not be an incident of the arrest. Under such circumstances, the search was illegal and the fruits of it should have been suppressed if, as contended by appellant, he showed the necessary proprietary interest upon which to object. Respondent contends that the facts found by the court show appellant to have no standing to complain of illegal search because he is shown "at most to be a mere lodger."

Appellant's standing to object under the circumstances of this case was established in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. Jones moved to suppress evidence seized under a search warrant and the government challenged his standing to object because he alleged neither ownership of the articles seized nor an interest in the apartment searched other than that of an "invitee or guest." The evidence showed the apartment belonged to a friend who had given petitioner a key to, and the use of, the apartment. He had a suit and a shirt there, his home was elsewhere, he paid nothing for use of the apartment, he slept there "maybe a night." At the time of the search the tenant had been out of town for five days. Upon these facts (less persuasive than those constituting the proprietary interest of Charles Edward Ross), the court found that the legally requisite interest in the premises upon which to object to a search was satisfied. 362 U.S. l. c. 263, 80 S.Ct. l. c. 732. "* * * petitioner's testimony on the

motion to suppress made out a sufficient interest in the premises to establish him as a 'person aggrieved' [Rule 41(e), Federal Rules of Criminal Procedure; Civil Rule 33.03, V.A.M.R.] by their search. That testimony established that at the time of the search petitioner was present in the apartment with the permission of Evans, whose apartment it was. The Government asserts that such an interest is insufficient to give standing. The Government does not contend that only ownership of the premises may confer standing. It would draw distinctions among various classes of possessors, deeming some, such as 'guests' and 'invitees' (occupant, lodger) with only the 'use' of the premises, to have too 'tenuous' an interest although concededly having 'some measure of control' through their 'temporary presence,' while conceding that others, who in a 'realistic sense, have dominion of the apartment' or who are 'domiciled' there, have standing. * * * We are persuaded * * * that it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions * * *. Distinctions such as those between 'lessee,' 'licensee,' 'invitee' and 'guest,' often only of gossamer strength, ought not to be determinative in fashioning procedures ultimately referable to constitutional safeguards. * * * As petitioner's testimony established Evans' consent to his presence in the apartment, he was entitled to have the merits of his motion to suppress adjudicated." 362 U.S. l. c. 265–267, 80 S.Ct. l. c. 733–734.

The facts as found by the trial court compel a finding of proprietary interest or standing in Charles Ross which call for application of the rule of Jones v. United States, supra; and, since the evidence seized, the check protector and other checks similar to the uttered check, was damaging evidence on the issue of his knowledge that the uttered check was a forgery, its admission at trial was not harmless error. Bumper v. North Carolina,

391 U.S. 543, 550, 88 S.Ct. 1788, 20 L.Ed. 2d 797.

State v. Anderson, Mo., 384 S.W.2d 591, cited by respondent, is not in point because no specific finding was indicated and the evidence warranted a finding that defendant did not reside at the premises searched; nor is State v. Cantrell, Mo., 310 S.W.2d 866, because defendant disclaimed any interest in the premises searched.

For this reason, the judgment must be reversed and, since the record does not indicate that the state cannot make a case, the cause should be remanded for a new trial.

Judgment reversed and cause remanded.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.